1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7

JIANFENG CHEN,

Case No. 20-cv-05254-DMR

8
Plaintiff,

9
v.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

10
ALEJANDRO N. MAYORKAS, et al.,

Re: Dkt. Nos. 9, 20

11
Defendants.

12          Plaintiff Jianfeng Chen filed this action under the Administrative Procedure Act ("APA"),

13  5 U.S.C. § 701 et seq. seeking to reverse the decision by the United States Citizenship and

14  Immigration Services ("USCIS") denying his Form I-90 Application to Replace Permanent

15  Resident Card.  Plaintiff now moves pursuant to Federal Rule of Civil Procedure 56 for summary

16  judgment to reverse the July 21, 2020 decision by USCIS denying his application.  [Docket No. 9

17  (Pl.'s Mot.).]  Defendants Alejandro N. Mayorkas, Secretary of the Department of Homeland

18  Security ("DHS"), et al. cross-move for summary judgment to affirm the decision.  [Docket No.

19  20 (Defs.' Mot.).]  The court ordered the parties to submit supplemental briefing, which they

20  timely filed.  [Docket Nos. 27-29.]

21          This matter is appropriate for determination without oral argument.  Civil L.R. 7-1(b).  For

22  the following reasons, Plaintiff's motion is granted.  Defendants' motion is denied.

23  **I.      FACTUAL AND PROCEDURAL BACKGROUND**

24          Plaintiff is a citizen of China.  He was admitted to the United States as a conditional

25  permanent resident on December 19, 2001 as the spouse of a U.S. citizen.

26          The court first sets forth the governing statutory framework contained in the relevant

27  provisions of the Immigration and Nationality Act ("INA") and then the undisputed facts

28  underlying these cross-motions.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

A.      Conditional Permanent Resident Status

"[A] conditional permanent resident is an alien admitted to the United States for permanent residence on a conditional basis due to, *inter alia*, his marriage to a U.S. citizen." *Eleri v. Sessions*, 852 F.3d 879, 881 (9th Cir. 2017) (citations omitted).  Conditional permanent residents possess all "rights, privileges, responsibilities and duties which apply to all other lawful permanent residents," including "the privilege of residing permanently in the United States as an immigrant." 8 C.F.R. § 216.1.  8 U.S.C. § 1186a governs conditional permanent resident status.  The statute provides in relevant part that when a noncitizen obtains permanent resident status as the spouse of a U.S. citizen "by virtue of a marriage which was entered into less than 24 months" before obtaining permanent resident status, such status is on a conditional basis.  8 U.S.C. § 1186a(a)(1), (h)(1)(A).

In order to remove the conditional basis for status, the conditional permanent resident and their U.S. citizen spouse must jointly file a petition to remove the conditions and appear together for an interview.  8 U.S.C. § 1186a(c)(1).  The petition, a Form I-751 Petition to Remove Conditions on Residence, must be filed within the 90-day period before the noncitizen's second anniversary of obtaining lawful admission for permanent residence.  8 U.S.C. § 1186a(d)(2)(A). Among other things, the petition must state that the marriage "was not entered into for the purpose of procuring [the noncitizen's] admission as an immigrant."  8 U.S.C. § 1186a(d)(1)(A).  The Ninth Circuit has explained that "[t]he two-year conditional period prescribed by these provisions 'strikes at the fraudulent marriage by the simple passage of time [because] it is difficult to sustain the appearance of a *bona fide* marriage over a long period.'"  *Eleri*, 852 F.3d at 881 (quoting H.R. Rep. No. 99-906, at 9-10 (1986)).  If the Secretary of Homeland Security determines that the facts alleged in the petition about the qualifying marriage are true following the interview, the conditions are removed and the noncitizen spouse remains a legal resident.  8 U.S.C. § 1186a(c)(3).

Under the INA, a noncitizen whose conditional permanent resident status under section 1186a has been terminated "is deportable."  8 U.S.C. § 1227(a)(1)(D)(i).  USCIS may terminate a conditional permanent resident's status for three reasons: 1) prior to the two-year anniversary of

2

United States District Court
Northern District of California

1    the noncitizen obtaining permanent resident status, the Secretary of Homeland Security determines

2    that the qualifying marriage was entered into for the purpose of procuring the noncitizen's

3    admission as an immigrant, 8 U.S.C. § 1186a(b)(1); 2) the conditional permanent resident and

4    spouse fail to file a timely joint petition to remove the conditions or do not appear for the required

5    interview, 8 U.S.C. § 1186a(c)(2); or 3) the conditional permanent resident and spouse file a

6    timely joint petition and appear for the interview but the Secretary of Homeland Security

7    determines that the facts contained in the petition are not true, 8 U.S.C. § 1186a(c)(3)(C).

8        The Secretary of Homeland Security may remove the conditional basis for a noncitizen

9    who does not meet the joint petition requirement if the noncitizen demonstrates one of four

10    grounds, collectively known as the "hardship waiver." 8 U.S.C. § 1186a(c)(4); *Vasquez v. Holder*,

11    602 F.3d 1003, 1006 (9th Cir. 2010). Only two bases for waiver have potential relevance here.[1]

12    First, noncitizens may seek a waiver of the joint filing requirement by establishing that "extreme

13    hardship would result if [the noncitizen] is removed." 8 U.S.C. § 1186a(c)(4)(A). Second,

14    noncitizens may seek a waiver by establishing that "the qualifying marriage was entered into in

15    good faith by the [noncitizen] spouse, but the qualifying marriage has been terminated" and the

16    noncitizen was not at fault for failing to file a joint petition. 8 U.S.C. § 1186a(c)(4)(B).

17    **B.**      **Plaintiff's Status**

18        Plaintiff is a citizen of China. Following his 2000 marriage to Sandra Mai, a U.S. citizen,

19    he was admitted to the United States as a conditional permanent resident under 8 U.S.C. §

20    1186a(a)(1) on December 19, 2001. Administrative Record ("A.R.") 140, 132, 139.[2] On

21    December 18, 2003, Plaintiff timely filed an I-751 petition to remove the conditions on his

22    permanent resident status in which he requested a hardship waiver of the requirement to file a joint

23    petition with Mai, asserting that he "entered into the marriage in good faith, but the marriage was

24    terminated through divorce/annulment" under 8 C.F.R. § 1186a(c)(4)(B). A.R. 135-36, 142-45.

25

---

26    [1] The other two bases apply to circumstances involving domestic battery or extreme cruelty. 8 U.S.C. § 1186a(c)(4)(C) and (D).

27

28    [2] The court granted Defendants leave to file the administrative record under seal as it contains personal and confidential information about Plaintiff and third parties, including minors. [Docket Nos. 23-3, 23-4 (A.R.), 26 (Order).]

1  Plaintiff subsequently did not attend his June 1, 2005 interview, and on June 29, 2005, USCIS

2  notified him that his conditional permanent resident status was terminated for his failure to appear.

3  A.R. 132.  *See* 8 U.S.C. § 1186a(c)(2)(A)(ii).

4      DHS initiated removal proceedings against Plaintiff on September 25, 2014 through the

5  issuance of a Notice to Appear, which charged Plaintiff as removable because his conditional

6  permanent resident status was terminated in June 2005.  A.R. 129-30.

7      On October 2, 2015, while removal proceedings were pending, Plaintiff filed a second I-

8  751 petition in which he again requested a waiver of the joint filing requirement on the ground that

9  he entered into the qualifying marriage in good faith but the marriage was terminated through

10  divorce or annulment.  A.R. 107-119.  In a declaration that apparently was submitted with his

11  petition, Plaintiff stated that following his divorce from Mai, he married Xueya Li, a U.S. citizen,

12  in 2014 and that they have two U.S. citizen children.[3]  A.R. 119; *see also* A.R. 99.

13     Plaintiff appeared for an interview for his second I-751 petition on May 17, 2016.  During

14  the interview, Plaintiff admitted under oath that he married Mai "because [he was] very poor in

15  China, and Ms. Mai helped [him] come to the United States by marrying [him]."  He also provided

16  a sworn statement in which he admitted that his marriage to Mai was "fraudulent."  A.R. 100, 2.

17  On March 27, 2018, USCIS denied Plaintiff's second I-751 petition on the ground that he failed to

18  establish that his marriage to Mai was entered into in good faith.  A.R. 98-101.  USCIS informed

19  Plaintiff that his "permanent resident status remains terminated as of December 19, 2003."  *Id*. at

20  100.

21     On October 9, 2019, the Department of Justice added an additional basis for removal of

22  Plaintiff, charging him as removable because he was "inadmissible at the time of admission

23  because he sought to procure admission by [marriage] fraud."  A.R. 3.

24     During his removal proceedings, Plaintiff applied for relief under 8 U.S.C. §

25  1227(a)(1)(H), which is known as the "fraud waiver."  A.R. 5-10.  *See Vasquez*, 602 F.3d at 1008,

26  1010.  In relevant part, the fraud waiver grants the Attorney General discretion to waive provisions

27

28  _____

[3] Plaintiff's children with Li were born in 2010 and 2014.  A.R. 82, 83.

4

United States District Court
Northern District of California

1   related to the removal of noncitizens on the ground that they were inadmissible at the time of

2   admission due to fraud or misrepresentation for any noncitizen who "is the spouse, parent, son, or

3   daughter" of a U.S. citizen or permanent resident.  *See* 8 U.S.C. § 1227(a)(1)(H).  If granted, the

4   waiver "waive[s] removal based on the grounds of inadmissibility directly resulting from such

5   fraud or misrepresentation."  *Id*.  On October 10, 2019, an immigration judge granted Plaintiff a

6   waiver of removability under 8 U.S.C. § 1227(a)(1)(H).  A.R. 1.

7        On October 23, 2019, Plaintiff filed a Form I-90 Application to Replace Permanent

8   Resident Card, seeking to update his expired lawful permanent resident card.  A.R. 382-84.

9   USCIS denied Plaintiff's I-90 application on July 21, 2020 on the ground that he is "ineligible to

10   be issued a replacement" lawful permanent resident card.  A.R. 390-93.  According to USCIS, as a

11   conditional permanent resident, Plaintiff was required to file a timely I-751, Petition to Remove

12   the Conditions on Residence, approval of which "results in the creation of a new Form I-551,

13   Permanent Resident Card."  A.R. 390.  USCIS noted that Plaintiff filed an I-751 petition on

14   October 8, 2015 which was denied on April 7, 2018,[4] and wrote, "[s]ince your Form I-751 was

15   denied, you are not eligible to receive a replacement Form I-551, Permanent Resident Card.  See 8

16   CFR 216.4(d)(2)."  A.R. 390.  That regulation addresses the denial of an I-751 Petition to Remove

17   Conditions on Residence, as follows:

18          If the director denies the joint petition, he or she shall provide written
           notice to the alien of the decision and the reason(s) therefor and shall
19          issue a notice to appear under section 239 of the Act and 8 CFR part
           239.  The alien's lawful permanent resident status shall be terminated
20          as of the date of the director's written decision. The alien shall also
           be instructed to surrender any Permanent Resident Card previously
21          issued by the Service.

22   8 C.F.R. § 216.4(d)(2).

23        **C.     Procedural History**

24        Plaintiff filed this lawsuit on July 30, 2020, challenging USCIS's July 21, 2020 decision

25   denying his I-90 application for a replacement permanent resident card.  The parties later

26

27   ─────────────
     [4] It is unclear why USCIS used the April 7, 2018 date, since the copy of the denial in the record is
     dated March 27, 2018.  A.R. 98-101.  This discrepancy does not appear to be material to the
28   outcome of the parties' dispute.

United States District Court
Northern District of California

1   stipulated to a briefing schedule for the instant motions.  [Docket Nos. 17, 19.][5]  On June 29,

2   2021, the court ordered the parties to file supplemental briefing regarding the motions for

3   summary judgment.  [Docket No. 27.]  The parties timely filed the supplemental briefs.  [Docket

4   Nos. 28 (Defs.' Supp. Br.), 29 (Pl.'s Supp. Br.).]

5   **II.     LEGAL STANDARD**

6           Plaintiff contends that USCIS's July 21, 2020 denial of his I-90 application was arbitrary

7   and capricious under the APA, 5 U.S.C. § 706(2)(A).  Compl. ¶¶ 11, 14.  That provision states that

8   a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions

9   found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

10  law . . ."

11          Review under the APA's arbitrary and capricious standard is deferential.  *Nat'l Ass'n of*

12  *Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007).  In such cases, a district court's role

13  is not fact-finding.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir.

14  1994).  "[T]he function of the district court is to determine whether or not as a matter of law the

15  evidence in the administrative record permitted the agency to make the decision it did."

16  *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985).  A court should not vacate an

17  agency's decision unless it has "relied on factors which Congress had not intended it to consider,

18  entirely failed to consider an important aspect of the problem, offered an explanation for its

19  decision that runs counter to the evidence before the agency, or is so implausible that it could not

20  be ascribed to a difference in view or the product of agency expertise."  *Nat'l Ass'n of Home*

21  *Builders*, 551 U.S. at 658 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.*

22  *Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

23

24  _____

[5] The parties agreed to submit three briefs in connection with these motions: Plaintiff's motion for
25  summary judgment; Defendants' opposition and cross-motion for summary judgment; and
Plaintiff's reply in support of his motion for summary judgment.  [*See* Docket Nos. 17, 19.]
26  Despite this agreement, Defendants filed a reply brief without leave of court in which they state
that Plaintiff's reply "raises a new and factually incorrect assertion" about the circumstances of the
27  filing of his first I-751 petition and that they "submit this Reply to correct that error."  [Docket No.
25.]  After purportedly correcting the error, Defendants then go on to raise a number of new
28  arguments.  The court declines to consider arguments raised for the first time in a reply brief that
was filed without leave.

United States District Court
Northern District of California

### III.    DISCUSSION

Plaintiff moves for summary judgment on the ground that USCIS's July 21, 2020 denial of his I-90 application for a replacement permanent resident card was arbitrary and capricious.  He argues that the agency's reliance on 8 C.F.R. § 216.4(d)(2) in denying his application for a replacement permanent resident card was erroneous because the cited regulation only addresses the denial of an I-751 Petition to Remove Conditions on Residence.  According to Plaintiff, the ultimate issue in this case "is the question of plaintiff's current immigration status."  Pl.'s Mot. 5.  Plaintiff contends that the immigration judge's grant of the section 1227(a)(1)(H) fraud waiver accomplished several things, including restoring him to his previous status of conditional permanent resident and ultimately removing the conditions on that status, so that he is now a lawful permanent resident and entitled to a new lawful permanent resident card.  Plaintiff argues that in adjudicating his I-90 application for a replacement permanent resident card, USCIS did not take the effect of the section 1227(a)(1)(H) fraud waiver into account.  Therefore, he argues, the denial of his I-90 application on the ground that USCIS has not granted an I-751 Petition to Remove Conditions on Residence—i.e., that Plaintiff has not successfully removed the conditions on his residence—was arbitrary and capricious.

In response, Defendants argue that Plaintiff's section 1227(a)(1)(H) fraud waiver waived only Plaintiff's removability on the ground of fraud; it did not waive the requirement that Plaintiff must remove the conditions on his permanent resident status under section 1186a.  Therefore, Defendants argue, Plaintiff must "file a [third] Form I-751 petition and have that petition approved in order to remove the conditions on his permanent resident status" pursuant to section 1186a(c), and only then will he be eligible for a lawful permanent resident card.  Defs.' Mot. 2.  Defendants contend that USCIS's denial of Plaintiff's I-90 application for a replacement permanent resident card was thus in accordance with section 1186a and not arbitrary and capricious.

In order to determine whether USCIS's denial of Plaintiff's I-90 petition was arbitrary and capricious, the court must examine Plaintiff's current immigration status as an individual who was a conditional permanent resident but whose status has been terminated and any effect of the section 1227(a)(1)(H) fraud waiver on that status.

1    The INA provides that "[a]ny alien who, by fraud or willfully misrepresenting a material

2    fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or

3    admission into the United States or other benefit provided under this chapter is inadmissible."  8

4    U.S.C. § 1182(a)(6)(C)(i).  In turn, 8 U.S.C. § 1227(a)(1) describes six "[c]lasses of deportable"

5    noncitizens.  In relevant part, the statute makes deportable noncitizens "who at the time of entry or

6    adjustment of status [were] within one or more of the classes of aliens inadmissible by the law

7    existing at such time."  8 U.S.C. § 1227(a)(1)(A).  Additionally, a noncitizen with conditional

8    permanent resident status under section 1186a "who has had such status terminated . . . is

9    deportable."

10    However, the Attorney General may waive removal for certain noncitizens pursuant to the

11    "fraud waiver," which "allows the Attorney General to waive removal for an alien who sought to

12    procure admission by fraud and is the spouse or parent of a U.S. citizen."  *Vasquez*, 602 F.3d at

13    1008 (citing 8 U.S.C. § 1227(a)(1)(H)).  Congress enacted the fraud waiver "as a humanitarian

14    gesture to preserve families comprised in part of United States citizens or lawful permanent

15    residents[.]"  *Id.* (quotation marks and citation omitted).  In relevant part, the fraud waiver

16    provision states:

17    **(H) Waiver authorized for certain misrepresentations**

18    The provisions of this paragraph relating to the removal of aliens
      within the United States on the ground that they were inadmissible at
19    the time of admission as aliens described in section 1182(a)(6)(C)(i)
      of this title, whether willful or innocent, may, in the discretion of the
20    Attorney General, be waived for any alien (other than an alien
      described in paragraph (4)(D)) who—

21
               (i)(I) is the spouse, parent, son, or daughter of a citizen of the
22             United States or of an alien lawfully admitted to the United
               States for permanent residence; and
23
                    (II) was in possession of an immigrant visa or
24                  equivalent document and was otherwise admissible to
                    the United States at the time of such admission . . . [.]
25
      (ii) is a VAWA self-petitioner.
26
      A waiver of removal for fraud or misrepresentation granted under this
27    subparagraph shall also operate to waive removal based on the
      grounds of inadmissibility directly resulting from such fraud or
28    misrepresentation.

8

1    8 U.S.C. § 1227(a)(1)(H).

2         The fraud waiver applies to each of the six classes of "deportable" noncitizens that are set

3    forth in section 1227(a)(1), among them noncitizens who "were inadmissible at the time of

4    admission, including aliens who sought to procure admission by fraud," and "any other provisions

5    of [section 1227(a)(1)] bearing on or connected to the removal of aliens on that ground." *Vasquez*,

6    602 F.3d at 1011-12.  The statute addresses the effect of a grant of a fraud waiver with respect to

7    removal based on inadmissibility; however, it is silent as to the corresponding impact on a

8    noncitizen's status.

9         Plaintiff contends that even though the "ultimate legal effect on" a noncitizen's status of

10   the granting of a section 1227(a)(1)(H) fraud waiver "is not explicitly spelled out in the statute,"

11   the "natural and logical consequence of a successful waiver application is obvious."  Plaintiff's

12   logic begins with the proposition that the statute expressly waives "the removal of aliens within

13   the United States on the ground that they were inadmissible at the time of admission" due to fraud

14   or misrepresentation.  *See* 8 U.S.C. § 1227(a)(1)(H) (citing 8 U.S.C. § 1182(a)(6)(C)(i) ("[a]ny

15   alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . admission

16   into the United States . . . is inadmissible").  Pl.'s Mot. 8.  Plaintiff argues that the waiver of

17   inadmissibility arising out of fraud or misrepresentation plus any inadmissibility grounds related

18   to that fraud or misrepresentation, and the subsequent termination of removal proceedings "returns

19   the alien to the status which they had previously attained, meaning, for aliens who adjusted status

20   upon admission to the U.S., status as a lawful permanent resident."  *Id*.

21        Plaintiff also argues that "there is no 'condition' remaining on such an alien's status after

22   the grant of the [section 1227(a)(1)(H) fraud] waiver."  Pl.'s Mot. 9.  Plaintiff contends that the

23   purpose of the two-year conditional basis of lawful permanent resident status based on a

24   noncitizen's marriage to a U.S. citizen is "meant to test the legitimacy of the marital relationship."

25   *Id*.  *See Eleri*, 852 F.3d at 881 (noting that "[t]he two-year conditional period prescribed by

26   [section 1186a(c)] strikes at the fraudulent marriage by the simple passage of time" (citation and

27   quotation marks omitted)).  In this case, Plaintiff argues that it makes no sense to conclude that he

28   is reinstated to conditional lawful permanent resident status, because the two-year period has long

*United States District Court*
*Northern District of California*

9

1    passed and he has already conceded that the marriage which conferred the status in the first

2    place—his marriage to Mai—was fraudulent and not in good faith.  Therefore, Plaintiff contends,

3    the "natural and logical consequence of [his] successful fraud waiver" is restoration of his status as

4    a lawful permanent resident *without conditions*.  *See* Pl.'s Opp'n & Reply 4.

5           Defendants do not dispute that the granting of the fraud waiver in Plaintiff's case waived

6    his removal based on his inadmissibility due to marriage fraud and terminated removal

7    proceedings.  However, they disagree that the section 1227(a)(1)(H) fraud waiver resulted in

8    changing his status to lawful permanent resident.  They argue that such an outcome is unsupported

9    and inconsistent with the statute.  Defendants note that the statute provides that the waiver applies

10   to "[t]he provisions of this paragraph relating to the removal of aliens" and says nothing about

11   waiving the requirements of section 1186a.  Defendants cite *Vasquez*, in which the Ninth Circuit

12   held that section 1227(a)(1)(H) applies to the six grounds of removability listed in section

13   1227(a)(1) but did not extend the waiver to remove conditions on a noncitizen's status under

14   section 1186a.  Defs.' Mot. 8-10 (citing *Vasquez*, 602 F.3d at 1006, 1012).

15          Defendants' reliance on *Vasquez* is misplaced because it did not reach the issue that

16   Defendants cite it for.  Vasquez was admitted as a conditional lawful permanent resident as the

17   spouse of a U.S. citizen.  602 F.3d at 1006.  She and her spouse jointly submitted an I-751 petition

18   to remove the conditions, but her spouse admitted at the interview that he married her for

19   immigration purposes.  *Id*. at 1007.  The Immigration and Naturalization Service ("INS") denied

20   the petition and terminated the plaintiff's conditional resident status.  It charged her with

21   removability "as an alien inadmissible at the time of admission because she sought to procure

22   admission by fraud."  *Id*. (citing 8 U.S.C. § 1227(a)(1)(A)).  INS then filed an additional charge

23   that she was removable "as an alien who was lawfully admitted for conditional permanent resident

24   status but whose status was later terminated."  *Id*. (citing 8 U.S.C. § 1227(a)(1)(D)(i)).  During

25   removal proceedings, Vasquez requested a fraud waiver under section 1227(a)(1)(H).  The

26   immigration judge held in relevant part that the fraud waiver did not apply to the second charge of

27   removability based on termination of conditional permanent resident status.  In the alternative, the

28   immigration judge "denied the waiver 'in the exercise of discretion'" and ordered Vasquez

United States District Court
Northern District of California

1    removed. *Id*. at 1008. The BIA affirmed the immigration judge's ruling that the fraud waiver

2    would not cover both grounds of removal as well as the discretionary waiver denial. *Id*.

3         The Ninth Circuit reversed. It examined "whether the fraud waiver applies to removal

4    based on the termination of conditional permanent residence, where the reason the alien's status

5    was terminated was that the Attorney General found the qualifying marriage was 'entered into for

6    the purpose of procuring an alien's admission as an immigrant.'" *Id*. at 1011 (quoting 8 U.S.C. §

7    1186a(d)(1)(A)). It ultimately concluded that "in [the plaintiff's] case, and in any other case in

8    which the Attorney General admits an alien . . . as a conditional permanent resident based on her

9    marriage to a U.S. citizen but later terminates that status upon a finding of marriage fraud, the

10   termination of status ground of removal does 'relat[e] to the removal of aliens . . . on the ground

11   that they were inadmissible at the time of admission' as aliens who sought to procure admission

12   by fraud." *Id*. at 1014 (quoting 8 U.S.C. § 1227(a)(1)(H)). This is because "[b]oth the termination

13   of status and the finding of inadmissibility result from a single determination by the Attorney

14   General that the qualifying marriage was entered into for the purpose of obtaining admission as an

15   immigrant." *Id*. (citing 8 U.S.C. § 1227(a)(1)(H)). Therefore, noncitizens charged with removal

16   based on termination of conditional lawful permanent resident status due to fraud "are . . . eligible

17   for the fraud waiver provided for in [section 1227(a)(1)(H)]." *Id*. at 1015. The court also reversed

18   the immigration judge's discretionary denial of the fraud waiver based on the judge's

19   misunderstanding of the statutory requirements for the waiver and remanded the matter to the BIA

20   to consider the plaintiff's application for a fraud waiver. *Id*. at 1017-18.

21        Importantly, *Vasquez* did not reach the issue presented here. The case supports Plaintiff in

22   that it recognizes that fraud waivers apply to removals based on the termination of conditional

23   permanent resident status due to an underlying fraudulent marriage. However, *Vasquez* says

24   nothing one way or the other about the issue in this case, which is the effect of a fraud waiver on

25   the current immigration status of Plaintiff, whose conditional permanent residence status was

26   terminated due to an underlying fraudulent marriage. Thus, contrary to Defendants' assertion,

27   *Vasquez* does not foreclose the relief Plaintiff now seeks.

28        Defendants also assert that USCIS terminated Plaintiff's status as a conditional lawful

United States District Court
Northern District of California

11

permanent resident in June 2005 for his failure to appear at an interview for his first I-751 petition, *see* A.R. 132, and that his status remains terminated.  Defs.' Mot. 7-8 (citing *Singh v. Holder*, 591 F.3d 1190, 1198 (9th Cir. 2010) (noting that after conditional lawful permanent resident's status was terminated, he "was a former permanent resident who lacked conditional status")).  Defendants contend that "[t]o remove the condition on his residence and remedy his status, Plaintiff must file a Form I-751 and the petition must be approved."  Defs.' Mot. 11.  They note that in filing a third Form I-751 petition, Plaintiff may seek a waiver of the joint filing requirement under 8 U.S.C. § 1186a(c)(4)(A), which requires him to establish that "extreme hardship would result if" he were removed for failure to file a joint petition.  In other words, Defendants' position is that even though Plaintiff is no longer a conditional lawful permanent resident, he must still "remove the condition on his residence" in order to be eligible for a permanent resident card.  *Id.* at 11-12.

Plaintiff responds that Defendants' position is untenable, because if Plaintiff is still subject to *conditional* lawful permanent resident status, he is "left with no conceivable means to ever remove the condition."  Pl.'s Mot. 9.  The court agrees.  It is legally impossible for Plaintiff to satisfy the requirements of section 1186(c), which sets forth the "[r]equirements of timely petition and interview for removal of condition."  *See* 8 U.S.C. § 1186(c).  He is unable to file a joint petition under 8 U.S.C. § 1186a(c)(1) because he has not been married to Mai since 2004.  *See* 8 U.S.C. § 1186a(c)(1) ("the alien spouse and the petitioning spouse . . . jointly must submit" a petition requesting the removal of the conditional basis for status).  Plaintiff also cannot obtain relief from the joint filing requirement because he cannot satisfy the requirements of a section 1186a(c)(4) hardship waiver.  To qualify for a hardship waiver, Plaintiff would have to establish that "extreme hardship would result if [the noncitizen] is removed."  However, the statute specifies that when "determining extreme hardship," the Secretary may "consider circumstances occurring only during the period that the alien was admitted for permanent residence on a conditional basis."  8 U.S.C. § 1186a(c)(4).  This means "that the only relevant time period is the period of conditional resident status, and as a result, any event that serves as a basis for a hardship finding must occur during this period," and not "subsequent to the grant of conditional resident status."  *Gitau v.*

12

1    *Sessions*, 878 F.3d 429, 434 (1st Cir. 2017) (citing *Matter of Munroe*, 26 I. & N. Dec. 428, 435

2    (BIA 2014)).  Here, Plaintiff's admission as a conditional lawful permanent resident was

3    terminated by no later than June 29, 2005.  A.R. 132.[6]  As noted by Plaintiff, "it approaches

4    absurdity to construct a scenario where extreme hardship as a result of prospective removal in the

5    mid-2020s is due solely" to circumstances that arose during the period of his conditional resident

6    status fifteen to twenty years ago.  Pl.'s Opp'n & Reply 4.

7           Plaintiff further explains that he cannot obtain hardship waiver relief from the joint filing

8    requirement under 8 U.S.C. § 1186a(c)(4)(B), because that provision requires a noncitizen to

9    establish that "the qualifying marriage was entered into in good faith by the [noncitizen] spouse,

10   but the qualifying marriage has been terminated" and the noncitizen was not at fault for failing to

11   file a joint petition.  Plaintiff has already conceded that his marriage to Mai was not entered into

12   good faith.

13          In sum, Plaintiff argues that filing a third Form I-751 petition would be futile.  Defendants

14   did not address Plaintiff's futility argument and were silent as to any non-futile action Plaintiff

15   could take to remedy his status.  The court ordered Defendants to "file a supplemental brief that

16   sets forth in detail the steps that Plaintiff can take to remedy his status at this time that would not

17   be futile," and ordered Plaintiff to file a response.  [Docket No. 27.]

18          Defendants' supplemental brief sets forth "two administrative options" available to

19   Plaintiff to remedy his status that they contend are not futile.  First, they assert that Plaintiff and

20   Defendants can "[f]ile a joint motion to reopen Plaintiff's prior removal proceedings with [USCIS]

21   so that Plaintiff can seek review of" the denial of his Form I-751 "under 8 U.S.C. §

22   1186a(c)(4)(B)."  Defs.' Supp. Br. 1-2.  According to Defendants, during the reopened removal

23   proceedings, Plaintiff may ask an immigration judge to consider his eligibility for a waiver of the

24   joint filing requirement based on the prior grant of a waiver of removability.  *Id*. at 2.  The

25   problem with this option is that it is undisputed that Plaintiff does not satisfy the requirements of 8

26   U.S.C. § 1186a(c)(4)(B), because that provision requires a noncitizen to establish that "the

27

28   [6] In its March 27, 2018 denial of Plaintiff's second I-751 petition, USCIS informed him that his
     "permanent resident status remains terminated as of December 19, 2003."  A.R. 100.

United States District Court
Northern District of California

qualifying marriage was entered into in good faith by the [noncitizen] spouse," among other things.  8 U.S.C. § 1186a(c)(4)(B).  Plaintiff has admitted that his marriage to Mai was not "entered into in good faith."  Defendants fail to explain how Plaintiff can argue in reopened removal proceedings that he satisfies the requirements of section 1186a(c)(4)(B) despite his admission of marriage fraud.

Defendants' second option is for Plaintiff to file a new (third) Form I-751 petition to remove conditions based on "extreme hardship' under 8 U.S.C. § 1186a(c)(4)(A), which Defendants state "does not require a *bona fide* marriage."  Defs.' Supp. Br. 2.  As discussed above, this is also not a viable option.  Section 1186a(c)(4)(A) provides that the Secretary of Homeland Security "may remove the conditional basis of the permanent resident status" for a noncitizen if the noncitizen demonstrates that "extreme hardship would result if such [noncitizen] is removed."  However, "the relevant period for determining whether extreme hardship would result from" Plaintiff's removal for purposes of establishing eligibility for the waiver "is the 2-year period for which [Plaintiff] was admitted as a conditional permanent resident."  *Matter of Munroe*, 26 I. & N. Dec. at 432 (analyzing section 1186a(c)(4)(A)).  In this case, that period ended nearly 18 years ago on December 19, 2003.  *See* A.R. 100.  Defendants completely ignore this portion of the statute.  They fail to address Plaintiff's point that it would be impossible for him to establish that an extreme hardship that would result if he were removed now, if that extreme hardship had to be based solely on facts from 2001 to 2003, long before the birth of his children in 2010 and 2014 and his 2014 marriage to Li.

*Matter of Munroe* squarely validates Plaintiff's position.  Munroe was admitted to the United States as a conditional permanent resident in July 1997 based on her 1996 marriage to a U.S. citizen.  26 I. & N. Dec. at 428.  They divorced in 1999 and Munroe was unable to meet the requirements for filing a joint petition to remove the conditions on her residence.  She filed two applications for waiver of the joint filing requirement, both of which were denied, and she was placed in removal proceedings.  *Id*. at 429.  She subsequently married a lawful permanent resident in 2007 and they had three children together.  *Id*.  She then filed a third waiver petition, arguing that "she would suffer extreme hardship if she were deported, primarily because she would be

separated from her second husband and their children." *Id*.  USCIS denied the petition "because the hardship she claimed was not based on circumstances occurring during" the two-year period of her conditional permanent resident status.  *Id*.  The Board of Immigration Appeals ("BIA") affirmed, holding that "the relevant period for determining [extreme] hardship is the 2-year period that a[ ] [noncitizen] was admitted for permanent residence on a conditional basis."  *Id*. at 430.  The BIA found that the hardship waiver of section 1186a(c)(4)(A) should "relate in some way to" the "marriage that generated the conditional permanent resident status," which was consistent with other waiver provisions, and that "[t]here is no indication that Congress intended the hardship waiver to extend to situations" where a "hardship claim is only related to the difficulty that may occur as a result of [Munroe's] separation from her second husband and the children born of that relationship.").  *Id*. at 433-34.  In this case, as in *Munroe*, it appears that any attempt by Plaintiff to establish an extreme hardship would not be based on his first marriage, but instead on his separation from his spouse and children if he were removed.

In sum, Defendants' two proposed administrative options are non-options; they will not remedy Plaintiff's situation.

In essence, Plaintiff is in limbo.   He is lawfully present in this country and is not subject to removal.  However, due to unique procedural twists and turns, he has no plausible avenue to move past the roadblock created by Defendants' denial of his I-90 request for issuance of a permanent resident card.  The paths identified by Defendants are both dead ends.  Defendants ignore this catch-22.  Defendants offer no other argument or authority supporting their position that USCIS's denial of Plaintiff's I-90 application for a replacement permanent resident card should be upheld.  Moreover, as discussed above, they offer no path forward for Plaintiff that would not be futile.  The court therefore vacates Defendants' decision as arbitrary and capricious because it "entirely failed to consider an important aspect of the problem."  *Nat'l Ass'n of Home Builders*, 551 U.S. at 658.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion is granted.  The parties shall immediately meet and confer regarding a proposed judgment and shall submit a stipulated proposed judgment

within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: September 24, 2021



Donna M. Ryu
United States Magistrate Judge